IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MOHINDER MIKE SANWAL and
KIRAN SANWAL, TRUSTEES OF
THE MOHINDER & KIRAN SANWAL
LIVING TRUST,

            Plaintiffs,                    No.  2:11-cv-0187 JAM KJN PS

      vs.

COUNTY OF SACRAMENTO;
SACRAMENTO COUNTY SHERIFF'S
DEPARTMENT, SHERIFF SCOTT R.
JONES; CONCORD POLICE
DEPARTMENT; SACRAMENTO POLICE
DEPARTMENT; CALIFORNIA HIGHWAY
PATROL; FEDERAL BUREAU OF
INVESTIGATION; FOLSOM POLICE
DEPARTMENT; and
DOES 1-100, INCLUSIVE,

            Defendants.               ORDER

_____/

        Plaintiffs Mohinder Mike Sanwal and Kiran Sanwal, Trustees of the Mohinder &

Kiran Sanwal Living Trust (the "plaintiffs") filed their verified complaint on January 20, 2011.

(Complaint ("Compl."), Dkt. No. 1.)  Defendants Sacramento County ("County"), the

Sacramento County Sheriff's Department ("Sheriff's Department") and Sheriff Scott R. Jones

("Sheriff Jones") (collectively, the "County Defendants") have moved to dismiss the complaint

1

1    in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 18.)  Plaintiffs

2    failed to file any written opposition or statement of non-opposition to the pending motion.[1]

3              The matter came on for hearing on June 23, 2011.[2]  Plaintiffs Kiran Sanwal and

4    Mohinder Mike Sanwal appeared in propria persona.  Attorney Mark O'Dea appeared on behalf

5    of the County Defendants.  The undersigned has considered the briefs, oral arguments, and the

6    appropriate portions of the record in this case and, for the reasons that follow, grants the County

7    Defendants' motion to dismiss.

8    I.    BACKGROUND

9              Plaintiffs are the alleged owners of an apartment complex located at 2410 Arden

10   Way in Sacramento, California.  (Compl. ¶¶ 1-2.)  Plaintiffs allege four claims for relief, all of

11   which arise from events at their apartment complex during a 70-hour hostage standoff, and which

12   allegedly involved law enforcement personnel from various agencies.  These claims are: (1)

13   "Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983"; (2) "Violation of Civil Rights

14   Pursuant to Title 42 U.S.C. § 1983"; (3) "Intentional Infliction of Severe Emotional Distress";

15   and (4) "Negligence per se – Criminal Trespass in Violation of Cal. Penal Code § 594."  (Compl.

16   ¶¶ 55-73.)  Plaintiffs allege that the County and other county, state, and federal law enforcement

17   agencies caused extensive and unnecessary property damage to their apartment complex during

18   the standoff and caused severe emotional distress to plaintiffs.  (Id.)  Plaintiffs allege that the law

19   enforcement agencies have not paid for the property damage.  (Id. at ¶¶ 39-49.)  Plaintiffs seek

20   compensatory and punitive damages, plus costs of suit.  (Id. at 11.)

21

22       [1]   On June 16, 2011, plaintiffs filed a written request asking that the hearing set for June
     23, 2011, be continued for approximately one month to permit them time to find an attorney.
23   (Dkt. No. 24.)  The court denied the request (Dkt. No. 25) but, during the hearing, heard from
     plaintiffs regarding the status of their legal representation in this action.
24
         [2]  This action proceeds before the undersigned pursuant to Eastern District of California
25   Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).  Plaintiffs have sworn that they are the
     beneficial owners of the Trust that owns the subject property in this action, and plaintiffs are
26   proceeding without counsel on the Trust's behalf.  (Dkt. No. 21.)

1    With respect to the County Defendants, the complaint alleges that "[d]efendant

2  County of Sacramento is a municipal entity" and "a public entity authorized by law to establish

3  certain departments responsible for enforcing the laws and protecting the welfare of the citizens

4  and public employees of the City of Sacramento."  (Compl. ¶ 3.)  The complaint also alleges that

5  "[d]efendant Sacramento County Sheriff's Department is . . . a public entity responsible for

6  providing law enforcement for Defendant County of Sacramento, including supervising,

7  operating, and managing the sheriff's force."  (Id. ¶ 4.)  The complaint alleges that "[d]efendant

8  Scott R. Jones is Sheriff of Sacramento County, and as such, he is responsible for formulating,

9  executing and administering Sacramento County's laws, customs, practices, and policies at issue

10  in this lawsuit; has enforced the challenged laws, customs and practices against Plaintiffs, and is

11  in fact, presently enforcing the challenged laws, customs and practices against Plaintiffs.

12  Defendant Scott R. Jones is sued in both his individual and official capacities."  (Id. ¶ 5.)

13    The complaint also alleges that the Sheriff's Department "had received at least

14  several days' notice that [the suspect] was in Sacramento County, thus they had ample

15  opportunity to apprehend" the suspect outside of plaintiffs' apartment complex and "without

16  causing substantial damages to Plaintiffs' property."  (Id. ¶ 19.)  The Sheriff's Department and

17  "agents of" other law enforcement agencies allegedly  "entered the Arden Way Apartment

18  Complex to attempt to make contact and apprehend" the suspect on June 9, 2010.  (Id. ¶ 20.)

19  The complaint alleges that the suspect engaged in a "gun battle with Defendant Sacramento

20  County Sheriff's SWAT Team members" and was killed on June 11, 2010.  (Id. ¶ 35.)

21    The complaint broadly references all "defendants" who were onsite during the

22  hostage standoff at issue (e.g., Compl. at ¶¶ 22-39), but does not clearly assert many factual

23  allegations against specific individuals as employees or agents of the County.  The complaint

24  does allege, however, that "Plaintiffs were informed by then-Sheriff John McGuiness that all

25  damage caused by the seemingly excessive force standoff would 'be taken care of' by the County

26  of Sacramento.  To date, plaintiffs have received no assistance from the County of Sacramento or

1   any of its agencies in repairing damages or even the cleanup left in the aftermath of the standoff."

2   (Id. ¶ 39.)  Plaintiffs also allege that they "made repeated attempts to contact various agencies,

3   specifically, the Sacramento County Sheriff, to request a maintenance team to clean up the

4   scene" and comply with County Health Inspection deadlines regarding the cleanup of blood, but

5   that plaintiffs "received resistance" and "were forced to utilize" their own maintenance team and

6   to contract with "outside maintenance crews."  (Id. ¶ 40.)

7           The complaint also alleges that plaintiffs "filed notices of claims with the County

8   of Sacramento" and that the County rejected the claims on July 20, 2010.  (Id. ¶¶ 50-51.)

9   II.     LEGAL STANDARDS

10          A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

11  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

12  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

13  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

14  plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

15  also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009), cert. denied, 130 S. Ct. 1053

16  (2010).  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual

17  allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its

18  face.'"  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v.

19  Iqbal, 129 S. Ct. 1937, 1949 (2009)); accord Cafasso, U.S. ex rel. v. General Dynamics C4

20  Systems, Inc., 637 F.3d 1047, 1055 n.6 (9th Cir. 2011) (clarifying that "plausibility" is part of the

21  pleading standard under Iqbal).  "'A claim has facial plausibility when the plaintiff pleads factual

22  content that allows the court to draw the reasonable inference that the defendant is liable for the

23  misconduct alleged.'"  Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th

24  Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).  The court accepts all of the facts alleged in the

25  complaint as true and construes them in the light most favorable to the plaintiff.  Corrie v.

26  Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as

1    true conclusory allegations that are contradicted by documents referred to in the complaint, and

2    [the court does] not necessarily assume the truth of legal conclusions merely because they are

3    cast in the form of factual allegations." Paulsen, 559 F.3d at 1071 (citations and quotation marks

4    omitted).

5            The court must construe a pro se pleading liberally to determine if it states a claim

6    and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an

7    opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See

8    Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); see also Balistreri v. Pacifica

9    Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally

10   construed, particularly where civil rights claims are involved"). In ruling on a motion to dismiss

11   pursuant to Rule 12(b), the court "may generally consider only allegations contained in the

12   pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."

13   Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and

14   quotation marks omitted).

15           Although the court may not consider a memorandum in opposition to a

16   defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see

17   Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider

18   allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g.,

19   Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (citing Orion Tire Corp. v. Goodyear

20   Tire & Rubber Co., 268 F.3d 1133, 1137-38 (9th Cir. 2001)).

21   III.    DISCUSSION

22           1.      Plaintiffs' Section 1983 Claims

23           Plaintiffs allege violations of their constitutional rights. Such claims may be

24   properly brought pursuant to 42 U.S.C. § 1983, which provides, in relevant part:

25           Every person who, under color of any statute, ordinance, regulation,
             custom, or usage, of any State . . . , subjects, or causes to be subjected, any
26           citizen of the United States or other person within the jurisdiction thereof

                                                     5

1    to the deprivation of any rights, privileges, or immunities secured by the
     Constitution and laws, shall be liable to the party injured in an action at
2    law, suit in equity, or other proper proceeding for redress . . . .

3        Generally, with respect to individual defendants, "Section 1983 imposes civil

4    liability upon an individual who under color of state law subjects or causes, any citizen of the

5    United States to the deprivation of any rights, privileges or immunities secured by the

6    Constitution and laws." Franklin v. Fox, 312 F.3d 423, 444 (9th Cir. 2002) (citing 42 U.S.C.

7    § 1983). "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a

8    right secured by the Constitution or laws of the United States was violated, and (2) that the

9    alleged violation was committed by a person acting under the color of State law." Long v.

10   County of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48

11   (1988)).

12           a.      Section 1983 Claims Against Sheriff Jones In His Personal Capacity

13       The complaint alleges that "Defendant Scott R. Jones is sued in both his

14   individual and official capacities." (Compl. ¶ 5.) Personal-capacity suits seek to impose

15   personal liability upon a government official for actions he takes under color of state law.

16   Dittman v. California, 191 F.3d 1020, 1027 (9th Cir. 1999) (citing Kentucky v. Graham, 473

17   U.S. 159, 165-66 (1985)). For Sheriff Jones to be personally liable under Section 1983, "it is

18   enough to show that the official, acting under color of state law, caused the deprivation of a

19   federal right." Kentucky, 473 U.S. at 166; Hafer v. Melo, 502 U.S. 21, 25 (1991)

20   ("Personal-capacity suits . . . seek to impose individual liability upon a government officer for

21   actions taken under color of state law. Thus, [o]n the merits, to establish personal liability in a §

22   1983 action, it is enough to show that the official, acting under color of state law, caused the

23   deprivation of a federal right.") (alterations in original) (internal quotation marks omitted).[3]

24   _____

25       [3] More is required in an official-capacity action against Sheriff Jones (and thus the
     County) however. A governmental entity is liable under § 1983 only when the entity itself is a
26   "moving force" behind the deprivation. Kentucky, 473 U.S. at 166. Thus, in an official-capacity
     suit, the entity's "policy or custom" must have played a part in the violation of federal law. Id.

1          A plaintiff alleging a Section 1983 claim against individuals must allege how *each*

2    individual defendant was personally involved in the deprivation of his civil rights.  E.g., James v.

3    Rowlands, 606 F.3d 646, 653 n.3 (9th Cir. 2010) ("Of course, § 1983 imposes liability on a

4    defendant only if he or she personally participated in or directed a violation."); Jones v. Williams,

5    297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be

6    liable under section 1983 there must be a showing of personal participation in the alleged rights

7    deprivation . . . ."); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must

8    allege facts, not simply conclusions, that show that an individual was personally involved in the

9    deprivation of his civil rights.  Liability under § 1983 must be based on the personal involvement

10   of the defendant.").

11          Here, the complaint makes a single broad reference to Sheriff Jones.[4]  (Compl. ¶

12   5).  But the complaint does not contain any factual allegations describing Sheriff Jones' alleged

13   conduct in connection with the hostage standoff, and thus contains no factual allegations

14   describing how Sheriff Jones' individual conduct might have violated plaintiffs' constitutional

15   rights.  In other words, while plaintiffs allege that "[d]efendant Scott R. Jones is Sheriff of

16   Sacramento County, and as such, he is responsible for formulating, executing and administering

17   Sacramento County's laws, customs, practices, and policies at issue in this lawsuit" (id.),

18   plaintiffs do not allege how Sheriff Jones was personally involved in the alleged violations of

19   rights, how he might have "personally participated in or directed a violation" thereof, let alone

20   which practices and policies are actually at issue and how they harmed plaintiffs.  See Barren, 152

21   F.3d at 1194; James, 606 F.3d at 653 n.3.

22          Accordingly, the complaint does not contain factual allegations sufficient to allege

23

24          [4]  The complaint alleges that "[d]efendant Scott R. Jones is Sheriff of Sacramento
     County, and as such, he is responsible for formulating, executing and administering Sacramento
25   County's laws, customs, practices, and policies at issue in this lawsuit; has enforced the
     challenged laws, customs and practices against Plaintiffs, and is in fact, presently enforcing the
26   challenged laws, customs and practices against Plaintiffs.  Defendant Scott R. Jones is sued in
     both his individual and official capacities."  (Id. ¶ 5.)

1   any personal-capacity Section 1983 claims as against Sheriff Jones, as a plaintiff alleging a

2   Section 1983 claim against individuals must allege how *each* individual defendant was personally

3   involved in the deprivation of his civil rights.  E.g., James, 606 F.3d at 653 n.3.  Further, as

4   currently drafted the complaint does not give Sheriff Jones fair notice of the claims against him or

5   the factual bases therefor.[5]  The motion to dismiss the Section 1983 claims against Sheriff Jones

6   in his personal capacity is granted, and the Section 1983 claims are dismissed as against him.

7   However, such dismissal is without prejudice, and plaintiffs shall have the opportunity to amend

8   their claims to correct the deficiencies described above.  The complaint also fails to contain

9   factual allegations sufficient to support a Section 1983 claim against Sheriff Jones in his official

10   capacity, for the reasons discussed below.

11              b.       Section 1983 Claims Against The County Entities And Sheriff Jones In His
                         Official Capacity
12

13          The complaint alleges violations of 42 U.S.C. § 1983 ("Section 1983") by the

14   County Entity Defendants (i.e., the County and the Sheriff's Department).  (Compl. ¶¶ 55-61.)

15   Municipalities may be liable under Section 1983, and police departments are, as a general matter,

16   separately suable entities that may be liable for civil rights violations.  See Karim-Panahi v. Los

17   Angeles Police Dept., 839 F.2d 621, 624 n.2 ("Municipal police departments are 'public entities'

18   under California law and, hence, can be sued in federal court for alleged civil rights violations.")

19   (citing Shaw v. Cal. Dep't of Alcoholic Beverage Control, 788 F.2d 600, 605 (9th Cir. 1986));

20

21          [5] Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain
22   statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
     defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic
23   Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47
     (1957)).  In order to survive dismissal for failure to state a claim, a complaint must contain more
24   than "a formulaic recitation of the elements of a cause of action;" it must contain factual
     allegations sufficient "to raise a right to relief above the speculative level."  Id.  However,
25   "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair
     notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551
26   U.S. 89, 93 (2007) (quoting Bell Atlantic Corp., 550 U.S. at 555) (citations and internal
     quotations omitted).

8

1   accord Streit v. County of L.A., 236 F.3d 552, 565 (9th Cir. 2001).  "Official-capacity suits, in

2   contrast [to personal-capacity suits], 'generally represent only another way of pleading an action

3   against an entity of which an officer is an agent.'"  Kentucky, 473 U.S. at 165-66 (citing Monell,

4   436 U.S. at 690 n.55); accord Chew v. Gates, 27 F.3d 1432, 1446 n.15 (9th Cir. 1994); Neveu v.

5   City of Fresno, 392 F. Supp. 2d 1159, 1171-72 (E.D. Cal. 2005) (citing Kentucky and other

6   cases).  "As long as the government entity receives notice and an opportunity to respond, an

7   official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

8   [Citation.]  It is not a suit against the official personally, for the real party in interest is the entity."

9   Kentucky, 473 U.S. at 165-66  (internal citations omitted).

10              Relevant here, in Monell v. Department of Social Services, 436 U.S. 658, the

11  Supreme Court limited municipal liability and held that "a municipality cannot be held liable

12  *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable

13  under § 1983 on a *respondeat superior* theory."  Id. at 691.  Instead, "[l]ocal governing bodies . . .

14  can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the

15  action that is alleged to be unconstitutional implements or executes a policy statement, ordinance,

16  regulation, or decision officially adopted and promulgated by that body's officers."  Id. at 690

17  (footnote omitted).  The Court further stated that "it is when execution of a [local] government's

18  policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

19  said to represent official policy, inflicts the injury that the government as an entity is responsible

20  under § 1983."  Id. at 693; see also Bd. of County Comm'rs of Bryan County, Okla. v. Brown,

21  520 U.S. 397, 403 (1997) ("[W]e have required a plaintiff seeking to impose liability on a

22  municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's

23  injury.").

24              The Ninth Circuit Court of Appeals has held that in order to establish municipal

25  liability under Section 1983, "the plaintiff must establish: (1) that he [or she] possessed a

26  constitutional right of which he [or she] was deprived; (2) that the municipality had a policy; (3)

1   that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4)

2   that the policy was the moving force behind the constitutional violation." Miranda v. City of

3   Cornelius, 429 F.3d 858, 868 (9th Cir. 2005) (citation and quotation marks omitted, modification

4   in original); see also Levine v. City of Alameda, 525 F.3d 903, 907 (9th Cir. 2008) ("To establish

5   [municipal] liability, a plaintiff must establish that he was deprived of a constitutional right and

6   that the city had a policy, practice, or custom which amounted to 'deliberate indifference' to the

7   constitutional right and was the 'moving force' behind the constitutional violation.") (citing Van

8   Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996), cert. denied, 519 U.S. 1111 (1997)).

9   With respect to the last element, "[t]here must be a direct causal link between a municipal policy

10  or custom and the alleged constitutional deprivation." Villegas v. Gilroy Garlic Festival Ass'n,

11  541 F.3d 950, 957 (9th Cir. 2008) (en banc) (citation and quotation marks omitted).  The Court of

12  Appeals has recognized that in addition to showing that a constitutional violation resulted from an

13  express municipal policy or custom, "[a] plaintiff may also establish municipal liability by

14  demonstrating that (1) the constitutional tort was the result of a longstanding practice or custom

15  which constitutes the standard operating procedure of the local government entity; (2) the

16  tortfeasor was an official whose acts fairly represent official policy such that the challenged action

17  constituted official policy; or (3) an official with final policy-making authority delegated that

18  authority to, or ratified the decision of, a subordinate." Price v. Sery, 513 F.3d 962, 966 (9th Cir.

19  2008) (citation and quotation marks omitted).

20          Here, plaintiffs' complaint does not allege facts sufficient to state a Section 1983

21  claim against the County Entity Defendants.  There are some factual allegations specifically

22  referencing the County Defendants (e.g., Compl. ¶¶ 19, 20, 35, 39, 40); but the vast majority of

23  the complaint's allegations reference all various law enforcement "defendants" collectively.  (E.g.,

24  id. ¶¶ 27-39, 55-61.)  Even if the collective allegations against "defendants" were charitably

25  construed as allegations against the County Defendants, however, the complaint fails to allege that

26  ////

10

1    the County Defendants[6] — or, for that matter, any of the law enforcement defendants — had a

2    particular *custom or policy* that was the moving force behind violation(s) of plaintiffs'

3    constitutional rights.[7]  In other words, as the County Defendants' moving papers correctly note

4    (Dkt. No. 18 at 5-6), the complaint does not allege the existence of a County policy that amounted

5    to deliberate indifference to plaintiffs' constitutional rights.  See Levine, 525 F.3d at 907.

6    Likewise, the complaint does not allege any direct causal link between such County policy and the

7    alleged constitutional deprivation.  See id.; Villegas, 541 F.3d at 957.  While a claim of municipal

8    liability under Section 1983 may be sufficient to withstand a motion to dismiss "even if the claim

9    is based on nothing more than a bare allegation that the individual officers' conduct conformed to

10   official policy, custom, or practice," Karim-Panahi, 839 F.2d at 624, plaintiffs' complaint stops

11   short of making even this "bare" allegation.  Here, the complaint does not contain even a "bare

12   allegation" that the law enforcement officers involved in the hostage standoff acted pursuant to a

13   custom or "policy."  See Karim-Panahi, 839 F.2d at 624; accord Del Conte v. San Francisco

14   Police Dept., No. C 06-05030 JSW, 2009 WL 2871052, at *3 (N.D. Cal. Sept. 1, 2009)

15

16   _____

       [6] Aside from the sole reference to Sheriff Jones, the complaint also contains blanket
17   allegations against all "defendants" who were onsite during the hostage standoff at issue. (E.g.,
     Compl. at ¶¶ 22-39.)  The complaint also broadly states that at all times, all defendants were
18   acting under color of state law.  (Id. ¶ 12 (". . . all Defendants acted under color of authority
     and/or state law. . . ."); ¶¶ 56-57 (". . . Defendants acted under color of state law . . . .").)  It is
19   possible that plaintiffs intend these allegations to be directed to individual agents of County
     Defendants whose identities are currently unknown.  However, while plaintiffs purport to sue
20   100 "Doe" defendants in this case, at present there are no specific factual allegations actually
     aimed at any "Doe" defendants — let alone "Doe" defendants affiliated with the County
21   Defendants.  (See id. ¶ 11 (defining Does 1-100 as "employees of the various Defendant law
     enforcement agencies") but see ¶¶ 16-49 (failing to assert any factual allegations as against any
22   Doe defendants).)

23       [7] The complaint makes only one reference to the existence of "laws, customs, practices,
     and policies."  (Compl. ¶ 5.)  This sole reference, however, does not describe what are the
24   alleged laws, customs, practices, and policies.  Instead, the allegation is that "Defendant Scott R.
     Jones is the Sheriff of Sacramento County, and as such, he is responsible for formulating,
25   executing, and administering Sacramento County's laws, customs, practices and policies at issue
     in this lawsuit . . . ."  (Id.)  Identifying an individual who allegedly formed and administered
26   unidentified "policies" is not the same as identifying the policies at issue or, at a bare minimum,
     alleging that certain acts were done *pursuant to* particular policies.

1    (unpublished).

2            Also, to the extent plaintiffs seek to premise the County's liability on alleged

3    tortious acts by Jones, see Price v. Sery, 513 F.3d at 966, plaintiffs fail to allege any particular

4    actions by Jones that violated constitutional rights.  Finally, as currently drafted, the complaint

5    does not give the County Defendants fair notice of the factual bases supporting a Section 1983

6    claim against them.  Erickson, 551 U.S. at 93 (2007) (quoting Bell Atlantic Corp., 550 U.S. at

7    555).  It is possible that plaintiffs intend *all* of their allegations to be directed to individual County

8    officers whose identities are currently unknown; however, while plaintiffs purport to sue 100

9    "Doe" defendants in this case, at present there are no specific factual allegations actually aimed at

10   any "Doe" defendants — let alone "Doe" defendants affiliated with the County.  (See id. ¶ 11

11   (defining Does 1-100 as "employees of the various Defendant law enforcement agencies") but see

12   ¶¶ 16-49 (failing to assert any factual allegations as against any Doe defendants).)  In any event,

13   plaintiffs have not clearly described which allegations are directed at the County, and the County

14   does not have fair notice of the factual bases for the Section 1983 claims asserted against it.

15           Accordingly, the County Defendants' motion to dismiss the Section 1983 claims is

16   granted, and the Section 1983 claims are dismissed as against the County Defendants.  However,

17   because plaintiffs are proceeding without counsel and entitled to leniency with respect to their

18   pleadings, this dismissal is without prejudice.[8]  Plaintiffs shall have the opportunity to amend their

19   pleading to allege facts sufficient to support each element required to state a Section 1983 claim

20   under the authorities described above.  Such amendment should include identification of the

21   County policy or policies alleged to have directly caused violation of plaintiffs' constitutional

22   rights, how the alleged violation occurred, and which specific constitutional right(s) were

23   allegedly violated.  If plaintiffs intend to allege that Sheriff Jones played a role in implementing

24

25           [8] E.g., King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) ("In civil rights cases, where the
26   plaintiff is pro se, we have an obligation to construe the pleadings liberally and to afford the
     plaintiff the benefit of any doubt.")

1    policies that violated plaintiffs' rights, plaintiffs' pleading amendments should describe that

2    alleged role and the policy or policies at issue.  If plaintiffs intend to pursue Section 1983 claims

3    against County agents, such as Sheriff Jones, in their official capacities, plaintiffs' pleading

4    amendments should include specific factual allegations describing the acts of those individual

5    defendants affiliated with the County, whether as named individuals or as individual "Doe"

6    defendants.

7                    2.        Plaintiffs' Common Law Tort Claims

8            Plaintiffs allege state law tort claims for "Intentional Infliction of Severe

9    Emotional Distress" ("IIED") and for "Negligence Per Se - Criminal Trespass" against all

10   defendants, presumably including the County Defendants.  (Compl. at ¶¶ 62-73.)

11                   a.        Legal Elements of Negligence and Trespass

12           Plaintiffs frame their fourth claim for relief as a "Negligence Per Se" claim based

13   on "Criminal Trespass Pursuant to California Penal Code § 594," however, "negligence per se" is

14   not an actionable "claim"[9] and neither is "criminal" trespass.  The plain text of California Penal

15   Code Section 594 does not provide a private right of action.  However, complaints by pro se

16

17           [9] In California, negligence per se is "a presumption of negligence [that] arises from the
18   violation of a statute which was enacted to protect a class of persons of which the plaintiff is a
     member against the type of harm which the plaintiff suffered as a result of the violation of the
19   statute." People of California v. Kinder Morgan Energy Partners, L.P., 569 F. Supp. 2d 1073,
     1087 (S.D. Cal. 2008) (citing cases).  Negligence per se "is merely an evidentiary doctrine and
20   not an independent cause of action." Id. (clarifying that negligence per se is simply a codified
     evidentiary doctrine that does not establish tort liability).  However, the facts giving rise to a
21   negligence claim – not a violation of the statute or regulation itself – are what entitle a plaintiff to
     recover civil damages for negligence per se. Spencer v. DHI Mortg. Co., Ltd., 642 F. Supp. 2d
22   1153, 1161-62 (E.D. Cal. 2009) ("The negligence per se doctrine assists as evidence to prove
     negligence . . . In such circumstances the plaintiff is not attempting to pursue a private cause of
23   action for violation of the statute; rather, he is pursuing a negligence action and is relying upon
     the violation of a statute, ordinance, or regulation to establish part of that cause of action."
24   (citations and internal quotation marks omitted); Basham v. Pac. Funding Group, No. 2:10-cv-96
     WBS GGH, 2010 WL 2902368, at *2 (E.D. Cal. July 22, 2010) (unpublished) ("The negligence
25   per se doctrine does not establish a cause of action distinct from negligence.").  While the
     allegations supporting an underlying negligence claim might support civil damages for
26   "negligence per se," "negligence per se" is not an independent cause of action. See Spencer, 642
     F. Supp. 2d at 1161-62.

                                               13

1   litigants should be construed with a degree of leniency, see King, 814 F.2d at 567, and based on

2   the factual allegations within the complaint, it appears plaintiffs may have intended to assert  a

3   claim for negligence rather than "negligence per se" and a claim for civil trespass and/or trespass

4   to chattels rather than "criminal trespass."

5            As to a negligence claim, generally, "[t]o prevail on [a] negligence claim, plaintiffs

6   must show that [the defendant] owed them a legal duty, that it breached the duty, and that the

7   breach was a proximate or legal cause of their injuries."  Merrill v. Navegar, Inc., 26 Cal. 4th 465,

8   477 (2001); Mendoza v. City of Los Angeles, 66 Cal. App. 4th 1333, 1339 (1998) (To plead a

9   cause of action for negligence, a plaintiff must show "(1) a legal duty to use reasonable care; (2)

10  breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." )

11           As to trespass, the essence of a claim for trespass is an "unauthorized entry" onto

12  the land of another.  E.g., Church of Christ in Hollywood v. Superior Court, 99 Cal. App. 4th

13  1244 (2002).  Also in California, a claim for trespass to chattels lies where an intentional

14  interference with the possession of personal property has proximately caused injury.  E.g., Intel

15  Corp. v. Hamidi, 30 Cal. 4th 1342, 1350-51 (2003).

16           Accordingly, plaintiff's claim for "Negligence Per Se - Criminal Trespass in

17  Violation of Cal. Penal Code § 594" is dismissed, but plaintiffs will have leave to amend their

18  pleading to state a claim for "negligence."  Such amendment should include factual allegations to

19  support each legal element of a negligence claim.  Plaintiffs will also have leave to amend their

20  pleading to state a claim for civil trespass and/or trespass to chattels if they wish.  Such

21  amendment should include factual allegations to support the legal elements of civil trespass and/or

22  trespass to chattels.  Such amendments should also comply with the additional claims presentation

23  requirements discussed below.

24           b.      Statute Authorizing Public Entity Liability

25           As noted above, the County is a public entity.  See Cal. Gov't Code § 811.2

26  ("'Public entity' includes the state . . . a county, city, district, public authority, public agency, and

14

1    any other political subdivision or public corporation in the State."); Karim-Panahi, 839 F.2d at

2    624 n.2 ("Municipal police departments are 'public entities' under California law . . . .")  The

3    California Tort Claims Act, which is also known as the California Tort Claims Act,[10] immunizes

4    public entities from tort liability in all cases except those where liability is explicitly created by a

5    particular statute.  Cal. Gov't Code § 815(a).[11]

6              The Government Claims Act "evinces the California Legislature's intent to channel

7    government liability into a statutory scheme, rather than embrace blanket sovereign immunity

8    from suit."  Liberal v. Estrada, 632 F.3d 1064, 1087 (9th Cir. 2011).  In California, a

9    governmental entity can only be sued in tort pursuant to an authorizing statute or enactment.  Van

10   Ort, 92 F.3d at 840; accord D.K. ex rel. G.M. v. Solano County Office of Educ., 667 F. Supp. 2d

11   1184, 1198 (E.D. Cal. 2009) ("To state a cause of action, every fact essential to the existence of

12   statutory liability must be pleaded with particularity, including the existence of a statutory duty. . .

13   . [Citations.]  Since the duty of a governmental agency can only be created by statute, the statute

14   claimed to establish the duty must be identified.") (internal citations omitted) (citing Cal. Gov't

15   Code § 815; Lopez v. S. Cal. Rapid Transit Dist., 40 Cal.3d 780, 785 n. 2 (1985); Morris v. State

16   of California, 89 Cal. App. 3d 962, 964 (1979); Searcy v. Hemet Unified Sch. Dist., 177 Cal. App.

17   3d 792, 802 (1986)).  Where a pleading "fail[s] to identify a statute creating liability" for a public

18

19       [10]  In 2007, the California Supreme Court adopted the practice of using the title
20   "Government Claims Act" instead of the more traditional "California Tort Claims Act" to
     adequately capture the breadth of the statutory framework and to reduce confusion over issues
     such as whether breach of contract claims fall within the statutory provisions.  See City of
21   Stockton v. Superior Court, 42 Cal. 4th 730, 741-42 & ns.6-7 (2007).

22       [11]  The Senate Legislative Committee Comments to California Government Code Section
23   815 provide, in pertinent part, that "[t]his section abolishes all common law or judicially declared
     forms of liability for public entities, except for such liability as may be required by the state or
24   federal constitution, e.g., inverse condemnation. In the absence of a constitutional requirement,
     public entities may be held liable only if a statute (not including a charter provision, ordinance or
25   regulation) is found declaring them to be liable . . . the practical effect of this section is to
     eliminate any common law governmental liability for damages arising out of torts. The use of the
26   word "tort" has been avoided, however, to prevent the imposition of liability by the courts by
     reclassifying the act causing the injury."

15

1   entity, claims against that public entity "must be dismissed with leave to amend."  D.K. ex rel.

2   G.M., 667 F. Supp. 2d at 1198 (citing Searcy, 177 Cal. App.3d at 802).

3               A governmental entity can be sued in tort based on a *respondeat superior* theory of

4   vicarious liability.  Robinson v. Solano County, 278 F.3d 1007, 1016 (9th Cir. 2002); Young v.

5   City of Visalia, 687 F. Supp. 2d 1155, 1164 -65 (E.D. Cal. 2010) (citing cases).  Specifically, a

6   "public entity is liable for injury proximately caused by an act or omission of an employee of the

7   public entity within the scope of his employment if the act or omission would, apart from this

8   section, have given rise to a cause of action against that employee or his personal representative."

9   Cal. Gov't Code § 815.2(a).  Pursuant to this statute, in certain cases a public entity may be liable

10  under California Government Code Section 815.2(a) for injuries proximately caused by an act or

11  omission of an employee within the scope of the employee's employment.  E.g., Robinson, 278

12  F.3d at 1016 (9th Cir. 2002) (citing Cal. Gov't Code § 815.2 and holding that, as to state law tort

13  claims, *respondeat superior* liability applies and the public entity employer is immune only

14  insofar as the public employee is immune).  Similarly, while "[u]nder California law, a public

15  entity generally is immune from suit for injuries arising from acts or omissions of the entity or its

16  employees[,] California law creates an exception . . . in cases where the public entity is 'under a

17  mandatory duty imposed by an enactment that is designed to protect against the risk of a particular

18  kind of injury,' and the public entity is liable for causing that kind of injury while failing to

19  exercise reasonable diligence in discharging its duty."  Mendez v. County of San Bernardino, 540

20  F.3d 1109, 1123 (9th Cir. 2008) (citing Cal. Gov't Code §§ 815(a); 815.6) (internal citation

21  omitted).  Indeed, the Legislative Committee Comment to Section 815.2 states, "Under this

22  section, it will not be necessary in every case to identify the particular employee upon whose act

23  the liability of the public entity is predicated.  All that will be necessary will be to show that some

24  employee of the public entity tortiously inflicted the injury in the scope of his employment under

25  circumstances where he would be personally liable."  The undersigned notes, however, that as

26  presently drafted the complaint does not reference Section 815.2 or any other statute upon which

1   public entity liability may be premised in this case.  See D.K. ex rel. G.M., 667 F. Supp. 2d at

2   1198 (where a pleading "fail[s] to identify a statute creating liability" for a public entity, claims

3   against that public entity "must be dismissed with leave to amend.")

4          Plaintiffs have not alleged which particular statute(s), if any, permit them to bring

5   state law tort claims against the County Defendants.  Further, even if the complaint made proper

6   reference to an authorizing statute, plaintiffs' practice of directing essentially every factual

7   allegation at *all* "defendants" obscures the factual bases of the claims directed against the County

8   Defendants.  A pleading should give a defendant fair notice of the claims against him, as well as

9   the factual allegations serving as the basis therefor.  Erickson, 551 U.S. at 93 (2007) (quoting Bell

10  Atlantic Corp., 550 U.S. at 555).  Accordingly, the County Defendants' motion to dismiss is

11  granted, and plaintiffs' state law tort claims are dismissed as against the County Defendants.

12  However, such dismissal is without prejudice, and plaintiffs shall have the opportunity to amend

13  their complaint so as to specify which statute(s), if any, authorize their tort claims against the

14  County Defendants.  Such amendment should also include clear statements of *which* factual

15  allegations are directed at the County Defendants and any Doe defendants affiliated with them.

16          c.      State Law Tort Claims Against Sheriff Jones

17          The complaint lacks *any* factual allegations describing Sheriff Jones' acts or

18  involvement in the hostage standoff (or its aftermath) and how those alleged acts might support

19  any of the alleged state-law tort claims as against Sheriff Jones.  Without supporting factual

20  allegations, the tort claims against Sheriff Jones are deficient.  Accordingly, the motion to dismiss

21  is granted, and plaintiffs' state law tort claims are dismissed as against Sheriff Jones.  However,

22  such dismissal is without prejudice, and plaintiffs shall have the opportunity to amend their

23  complaint so as to include factual allegations directed at Sheriff Jones.

24          Accordingly, for the foregoing reasons IT IS HEREBY ORDERED that:

25          (1)     The County Defendants' Motion to Dismiss (Dkt. No. 18) is granted; and

26  plaintiffs' claims are dismissed without prejudice as against the County Defendants.

1         (2)    Plaintiffs are granted leave to file a First Amended Complaint within 45

2  days of the date of this order.  This 45 day period shall give plaintiffs additional time to search for

3  an attorney to represent them in this action.  If plaintiffs are able to find an attorney to represent

4  them in this action, the attorney shall file his or her appearance within 45 days of the date of this

5  order, and may request additional time to prepare an amended pleading.  If plaintiffs are unable to

6  find an attorney within this period, and if plaintiffs wish to maintain this action and proceed

7  without counsel, plaintiffs themselves remain obligated to file the First Amended Complaint

8  within 45 days of the date of this order.[12]  A failure to do so may result in the dismissal of this

9  action.

10         IT IS SO ORDERED.

11  DATED:  June 24, 2011

12

13                          _____

14                     KENDALL J. NEWMAN
                       UNITED STATES MAGISTRATE JUDGE

---

25      [12]  Should plaintiffs wish to voluntarily dismiss their action rather than proceed without

26  counsel, as plaintiffs appeared to indicate during the hearing on June 23, 2011, plaintiffs are
directed to Federal Rule of Civil Procedure 41(a).