1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MOHINDER MIKE SANWAL and
     KIRAN SANWAL, TRUSTEES OF
11   THE MOHINDER & KIRAN SANWAL
     LIVING TRUST,
12

13            Plaintiffs,                    No.  2:11-cv-0187 JAM KJN PS

14        vs.

15   COUNTY OF SACRAMENTO;
     SACRAMENTO COUNTY SHERIFF'S
16   DEPARTMENT, SHERIFF SCOTT R.
     JONES; CONCORD POLICE
17   DEPARTMENT; SACRAMENTO POLICE
     DEPARTMENT; CALIFORNIA HIGHWAY
18   PATROL; FEDERAL BUREAU OF
     INVESTIGATION; FOLSOM POLICE
19   DEPARTMENT; and
     DOES 1-100, INCLUSIVE,
20
              Defendants.              ORDER
21   _____/

22            Plaintiffs Mohinder Mike Sanwal and Kiran Sanwal, Trustees of the Mohinder &

23   Kiran Sanwal Living Trust (the "plaintiffs") filed their verified complaint on January 20, 2011.

24   (Complaint ("Compl."), Dkt. No. 1.)  Defendant City of Sacramento (sued herein as Sacramento

25   Police Department) (the "defendant" or "City") has moved to dismiss the complaint in its entirety

26   pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 9.)  Plaintiffs failed to file any

1

1   written opposition or statement of non-opposition to the pending motion.[1]

2           The matter came on for hearing on June 23, 2011.[2]  Plaintiffs Kiran Sanwal and

3   Mohinder Mike Sanwal appeared in propria persona.  Attorney Sari Dierking appeared on behalf

4   of the City.  The undersigned has considered the briefs, oral arguments, and the appropriate

5   portions of the record in this case and, for the reasons that follow, the City's motion to dismiss is

6   granted, but with leave to amend.

7   I.      BACKGROUND

8           Plaintiffs are the alleged owners of an apartment complex located at 2410 Arden

9   Way in Sacramento, California.  (Compl. ¶¶ 1-2.)  Plaintiffs allege four claims for relief, all of

10  which arise from events at their apartment complex during a 70-hour hostage standoff, and which

11  allegedly involved law enforcement personnel from various agencies.  These claims are: (1)

12  "Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983"; (2) "Violation of Civil Rights

13  Pursuant to Title 42 U.S.C. § 1983"; (3) "Intentional Infliction of Severe Emotional Distress";

14  and (4) "Negligence per se – Criminal Trespass in Violation of Cal. Penal Code § 594."  (Compl.

15  ¶¶ 55-73.)  Plaintiffs allege that the City's police department and other county, state, and federal

16  law enforcement agencies caused extensive and unnecessary property damage to their apartment

17  complex during the standoff and caused severe emotional distress to plaintiffs.  (Id.)  Plaintiffs

18  allege that the law enforcement agencies have not paid for the property damage.  (Id. at ¶¶ 39-

19  49.)  Plaintiffs seek compensatory and punitive damages, plus costs of suit.  (Id. at 11.)  Plaintiffs

20  name the City as an entity defendant and broadly reference all "defendants" who were onsite

21

22          [1] On June 16, 2011, plaintiffs filed a written request asking that the hearing set for June
23, 2011, be continued for approximately one month to permit them time to find an attorney.
23  (Dkt. No. 24.)  The court denied the request (Dkt. No. 25) but, during the hearing, heard from
    plaintiffs regarding the status of their legal representation in this action.

24

25          [2] This action proceeds before the undersigned pursuant to Eastern District of California
    Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).  Plaintiffs have sworn that they are the
26  beneficial owners of the Trust that owns the subject property in this action, and plaintiffs are
    proceeding without counsel on the Trust's behalf. (Dkt. No. 21.)

1   during the hostage standoff at issue (<u>e.g.</u>, Compl. at ¶¶ 22-39), but do not make any allegations

2   against any specific individuals as employees or agents of the City.

3   II.    <u>LEGAL STANDARDS</u>

4           A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

5   challenges the sufficiency of the pleadings set forth in the complaint.  <u>Vega v. JPMorgan Chase</u>

6   <u>Bank, N.A.</u>, 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

7   of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

8   plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); <u>see</u>

9   <u>also</u> <u>Paulsen v. CNF, Inc.</u>, 559 F.3d 1061, 1071 (9th Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 1053

10   (2010).  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual

11   allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its

12   face.'"  <u>Coto Settlement v. Eisenberg</u>, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting <u>Ashcroft v.</u>

13   <u>Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)); <u>accord</u> <u>Cafasso, U.S. ex rel. v. General Dynamics C4</u>

14   <u>Systems, Inc.</u>, 637 F.3d 1047, 1055 n.6 (9th Cir. 2011) (clarifying that "plausibility" is part of the

15   pleading standard under <u>Iqbal</u>).  "'A claim has facial plausibility when the plaintiff pleads factual

16   content that allows the court to draw the reasonable inference that the defendant is liable for the

17   misconduct alleged.'"  <u>Caviness v. Horizon Cmty. Learning Ctr., Inc.</u>, 590 F.3d 806, 812 (9th

18   Cir. 2010) (quoting <u>Iqbal</u>, 129 S. Ct. at 1949).  The court accepts all of the facts alleged in the

19   complaint as true and construes them in the light most favorable to the plaintiff.  <u>Corrie v.</u>

20   <u>Caterpillar</u>, 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as

21   true conclusory allegations that are contradicted by documents referred to in the complaint, and

22   [the court does] not necessarily assume the truth of legal conclusions merely because they are

23   cast in the form of factual allegations."  <u>Paulsen</u>, 559 F.3d at 1071 (citations and quotation marks

24   omitted).

25           The court must construe a pro se pleading liberally to determine if it states a claim

26   and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an

1   opportunity to cure them if it appears at all possible that the plaintiff can correct the defect.  See

2   Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); see also Balistreri v. Pacifica

3   Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally

4   construed, particularly where civil rights claims are involved").  In ruling on a motion to dismiss

5   pursuant to Rule 12(b), the court "may generally consider only allegations contained in the

6   pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."

7   Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and

8   quotation marks omitted).

9          Although the court may not consider a memorandum in opposition to a

10  defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see

11  Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider

12  allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g.,

13  Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (citing Orion Tire Corp. v. Goodyear

14  Tire & Rubber Co., 268 F.3d 1133, 1137-38 (9th Cir. 2001)).

15  III.   DISCUSSION

16         1.     Plaintiffs' Section 1983 Claims

17         Plaintiffs allege violations of their constitutional rights.  Such claims may be

18  properly brought pursuant to 42 U.S.C. § 1983, which provides, in relevant part:

19         Every person who, under color of any statute, ordinance, regulation,
           custom, or usage, of any State . . . , subjects, or causes to be subjected, any
20         citizen of the United States or other person within the jurisdiction thereof
           to the deprivation of any rights, privileges, or immunities secured by the
21         Constitution and laws, shall be liable to the party injured in an action at
           law, suit in equity, or other proper proceeding for redress . . . .
22

23         Generally, with respect to individual defendants, "Section 1983 imposes civil

24  liability upon an individual who under color of state law subjects or causes, any citizen of the

25  United States to the deprivation of any rights, privileges or immunities secured by the

26  Constitution and laws."  Franklin v. Fox, 312 F.3d 423, 444 (9th Cir. 2002) (citing 42 U.S.C.

1   § 1983).  "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a

2   right secured by the Constitution or laws of the United States was violated, and (2) that the

3   alleged violation was committed by a person acting under the color of State law."  Long v.

4   County of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48

5   (1988)).

6          Here, plaintiffs have not asserted any Section 1983 claims against any *individual*

7   defendants related to the City.  However, the complaint contains blanket allegations against all

8   "defendants" who were onsite during the hostage standoff at issue.  (E.g., Compl. at ¶¶ 22-39.)

9   The complaint also broadly states that at all times, all defendants were acting under color of state

10  law.  (Id. ¶ 12 (". . . all Defendants acted under color of authority and/or state law. . . ."); ¶¶  56-

11  57 (". . . Defendants acted under color of state law . . . .").)  It is possible that plaintiffs intend

12  these allegations to be directed to individual City officers whose identities are currently

13  unknown; however, while plaintiffs purport to sue 100 "Doe" defendants in this case, at present

14  there are no specific factual allegations actually aimed at any "Doe" defendants—let alone "Doe"

15  defendants affiliated with the City.  (See id. ¶ 11 (defining Does 1-100 as "employees of the

16  various Defendant law enforcement agencies") but see ¶¶ 16-49 (failing to assert any factual

17  allegations as against any Doe defendants).)  Accordingly, the complaint does not presently

18  allege Section 1983 claims as against any individuals affiliated with the City.

19         Instead, the complaint merely alleges violations of 42 U.S.C. § 1983 ("Section

20  1983") by the City's police department.  (Compl. at ¶¶ 55-61.)  Municipalities may be liable

21  under Section 1983, and police departments are, as a general matter, separately suable entities

22  that may be liable for civil rights violations.  See Karim-Panahi v. Los Angeles Police Dept., 839

23  F.2d 621, 624 n.2 ("Municipal police departments are 'public entities' under California law and,

24  hence, can be sued in federal court for alleged civil rights violations.") (citing Shaw v. Cal. Dep't

25  of Alcoholic Beverage Control, 788 F.2d 600, 605 (9th Cir. 1986)); accord Streit v. County of

26  L.A., 236 F.3d 552, 565 (9th Cir. 2001).

5

1         Relevant here, in Monell v. Department of Social Services, 436 U.S. 658, the

2 Supreme Court limited municipal liability and held that "a municipality cannot be held liable

3 *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable

4 under § 1983 on a *respondeat superior* theory." Id. at 691.  Instead, "[l]ocal governing

5 bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief

6 where . . . the action that is alleged to be unconstitutional implements or executes a policy

7 statement, ordinance, regulation, or decision officially adopted and promulgated by that body's

8 officers." Id. at 690 (footnote omitted).  The Court further stated that "it is when execution of a

9 [local] government's policy or custom, whether made by its lawmakers or by those whose edicts

10 or acts may fairly be said to represent official policy, inflicts the injury that the government as an

11 entity is responsible under § 1983." Id. at 693; see also Bd. of County Comm'rs of Bryan

12 County, Okla. v. Brown, 520 U.S. 397, 403 (1997) ("[W]e have required a plaintiff seeking to

13 impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that

14 caused the plaintiff's injury.").

15         The Ninth Circuit Court of Appeals has held that in order to establish municipal

16 liability under Section 1983, "the plaintiff must establish: (1) that he [or she] possessed a

17 constitutional right of which he [or she] was deprived; (2) that the municipality had a policy; (3)

18 that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4)

19 that the policy was the moving force behind the constitutional violation." Miranda v. City of

20 Cornelius, 429 F.3d 858, 868 (9th Cir. 2005) (citation and quotation marks omitted, modification

21 in original); see also Levine v. City of Alameda, 525 F.3d 903, 907 (9th Cir. 2008) ("To establish

22 [municipal] liability, a plaintiff must establish that he was deprived of a constitutional right and

23 that the city had a policy, practice, or custom which amounted to 'deliberate indifference' to the

24 constitutional right and was the 'moving force' behind the constitutional violation.") (citing Van

25 Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996), cert. denied, 519 U.S. 1111 (1997)).

26 With respect to the last element, "[t]here must be a direct causal link between a municipal policy

1  or custom and the alleged constitutional deprivation." <u>Villegas v. Gilroy Garlic Festival Ass'n</u>,

2  541 F.3d 950, 957 (9th Cir. 2008) (en banc) (citation and quotation marks omitted).

3  Additionally, the Court of Appeals has recognized that in addition to showing that a

4  constitutional violation resulted from an express municipal policy or custom, "[a] plaintiff may

5  also establish municipal liability by demonstrating that (1) the constitutional tort was the result of

6  a longstanding practice or custom which constitutes the standard operating procedure of the local

7  government entity; (2) the tortfeasor was an official whose acts fairly represent official policy

8  such that the challenged action constituted official policy; or (3) an official with final

9  policy-making authority delegated that authority to, or ratified the decision of, a subordinate."

10  <u>Price v. Sery</u>, 513 F.3d 962, 966 (9th Cir. 2008) (citation and quotation marks omitted).

11         Here, plaintiffs' complaint does not allege facts sufficient to state a Section 1983

12  claim against the City.  Plaintiffs allege that the City "is and at all times mentioned herein was a

13  public entity responsible for providing law enforcement for Defendant County of Sacramento,

14  including supervising, operating, and managing the police force."  (Compl. ¶ 7.)  Plaintiffs also

15  allege that "the Sacramento Police Department" was dispatched to the scene of the hostage

16  standoff, along with other law enforcement entities.  (Compl. ¶ 26.)  These are the only two

17  allegations specifically referencing the City (and its police department); the majority of the

18  complaint's allegations reference all various law enforcement "defendants" collectively.  (<u>E.g.</u>,

19  <u>id.</u> at ¶¶ 27-39, 55-61.)  Even if each of these collective allegations were charitably construed as

20  allegations against the City, however, the complaint fails to allege that the City—or, for that

21  matter, any of the law enforcement defendants—had a particular *custom or policy* that was the

22  moving force behind violation(s) of plaintiffs' constitutional rights.[3]  In other words, as the City's

23  _____

24         [3] Indeed, on the undersigned's review, the complaint makes only one reference to the
existence of "laws, customs, practices, and policies."  (Compl. ¶ 5.)  This sole reference,

25  however, does not describe what are the alleged laws, customs, practices, and policies.  Instead,
the allegation is that "Defendant Scott R. Jones is the Sheriff of Sacramento County, and as such,

26  he is responsible for formulating, executing, and administering Sacramento County's laws,
customs, practices and policies at issue in this lawsuit . . . ."  (<u>Id.</u>)  Identifying an individual who

moving papers correctly note (Dkt. No. 9-1 at 3-4), the complaint does not allege the existence of a City policy that amounted to deliberate indifference to plaintiffs' constitutional rights.  See Levine, 525 F.3d at 907.  Likewise, the complaint does not allege any direct causal link between such a City policy and the alleged constitutional deprivation.  See id.; Villegas, 541 F.3d at 957.  While a claim of municipal liability under Section 1983 may be sufficient to withstand a motion to dismiss "even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice," Karim-Panahi, 839 F.2d at 624, plaintiffs' complaint stops short of making even this "bare" allegation.  Here, the complaint does not contain even a "bare allegation" that the law enforcement officers involved in the hostage standoff acted pursuant to a custom or "policy."  See Karim-Panahi, 839 F.2d at 624; accord Del Conte v. San Francisco Police Dept., No. C 06-05030 JSW, 2009 WL 2871052, at *3 (N.D. Cal. Sept. 1, 2009) (unpublished).

Finally, as currently drafted, the complaint does not give the City fair notice of the factual bases supporting a Section 1983 claim against it.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).)  It is possible that plaintiffs intend all of their allegations to be directed to individual City officers whose identities are currently unknown; however, while plaintiffs purport to sue 100 "Doe" defendants in this case, at present there are no specific factual allegations actually aimed at any "Doe" defendants, let alone "Doe" defendants affiliated with the City.  (See id. ¶ 11 (defining Does 1-100 as "employees of the various Defendant law enforcement agencies") but see ¶¶ 16-49 (failing to assert any factual allegations as against any Doe defendants).)  In any event, plaintiffs have not clearly described which allegations are directed at the City or its agents, and the City does not have fair notice of the factual bases for the Section 1983 claims asserted against it.

---

allegedly formed and administered unidentified "policies" is not the same as identifying the policies at issue or, at a bare minimum, alleging that certain acts were done *pursuant to* particular policies.

1        Accordingly, the City's motion to dismiss the Section 1983 claims is granted, and

2   the Section 1983 claims are dismissed as against the City.  However, because plaintiffs are

3   proceeding without counsel and entitled to leniency with respect to their pleadings, this dismissal

4   is without prejudice.[4]  Plaintiffs shall have the opportunity to amend their pleading to allege facts

5   sufficient to support each element required to state a Section 1983 claim under the authorities

6   described above.  Such amendment should include identification of the City policy or policies

7   alleged to have directly caused violation of plaintiffs' constitutional rights, how the alleged

8   violation occurred, and which specific constitutional right(s) were allegedly violated.  If plaintiffs

9   intend to pursue Section 1983 claims against *individual* City officers or agents, plaintiffs'

10  pleading amendments should include specific factual allegations describing the acts of individual

11  defendants affiliated with the City, whether as named individuals or as individual "Doe"

12  defendants.

13              2.      Plaintiffs' Common Law Tort Claims

14        Plaintiffs allege state law tort claims for "Intentional Infliction of Severe

15  Emotional Distress" ("IIED") and for "Negligence Per Se - Criminal Trespass" against all

16  defendants, presumably including the City.  (Compl. at ¶¶ 62-73.)  As noted above, the City is a

17  public entity.  See Cal. Gov't Code § 811.2 ("'Public entity' includes the state . . . a county, city,

18  district, public authority, public agency, and any other political subdivision or public corporation

19  in the State."); Karim-Panahi, 839 F.2d at 624 n.2 ("Municipal police departments are 'public

20  entities' under California law . . . .")

21        The Government Claims Act, which is also known as the California Tort Claims

22  Act,[5] immunizes public entities from tort liability in all cases except those where liability is

23  _____

24      [4]  E.g., King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) ("In civil rights cases, where the
    plaintiff is pro se, we have an obligation to construe the pleadings liberally and to afford the
25  plaintiff the benefit of any doubt.")

26      [5]  In 2007, the California Supreme Court adopted the practice of using the title
    "Government Claims Act" instead of the more traditional "California Tort Claims Act" to

explicitly created by a particular statute.  Cal. Gov't Code § 815(a).[6]  The Government Claims

Act "evinces the California Legislature's intent to channel government liability into a statutory

scheme, rather than embrace blanket sovereign immunity from suit."  Liberal v. Estrada, 632

F.3d 1064, 1087 (9th Cir. 2011).  In California, a governmental entity can only be sued in tort

pursuant to an authorizing statute or enactment.  Van Ort, 92 F.3d at 840; accord D.K. ex rel.

G.M. v. Solano County Office of Educ., 667 F. Supp. 2d 1184, 1198 (E.D. Cal. 2009) ("To state

a cause of action, every fact essential to the existence of statutory liability must be pleaded with

particularity, including the existence of a statutory duty. . . . [Citations.] Since the duty of a

governmental agency can only be created by statute, the statute claimed to establish the duty must

be identified.") (internal citations omitted) (citing Cal. Gov't Code § 815; Lopez v. S. Cal. Rapid

Transit Dist., 40 Cal.3d 780, 785 n. 2 (1985); Morris v. State of California, 89 Cal. App. 3d 962,

964 (1979); Searcy v. Hemet Unified Sch. Dist., 177 Cal. App. 3d 792, 802 (1986)).  Where a

pleading "fail[s] to identify a statute creating liability" for a public entity, claims against that

public entity "must be dismissed with leave to amend."  D.K. ex rel. G.M., 667 F. Supp. 2d at

1198 (citing Searcy, 177 Cal. App.3d at 802.)

       The undersigned notes that, pursuant to statute, in certain cases a public entity

may be liable under California Government Code Section 815.2(a) for injuries proximately

caused by an act or omission of an employee within the scope of the employee's employment.

---

adequately capture the breadth of the statutory framework and to reduce confusion over issues
such as whether breach of contract claims fall within the statutory provisions.  See City of
Stockton v. Superior Court, 42 Cal. 4th 730, 741-42 & ns.6-7 (2007).

   [6]  The Senate Legislative Committee Comments to California Government Code Section
815 provide, in pertinent part, that "[t]his section abolishes all common law or judicially declared
forms of liability for public entities, except for such liability as may be required by the state or
federal constitution, e.g., inverse condemnation. In the absence of a constitutional requirement,
public entities may be held liable only if a statute (not including a charter provision, ordinance or
regulation) is found declaring them to be liable. . . the practical effect of this section is to
eliminate any common law governmental liability for damages arising out of torts. The use of the
word "tort" has been avoided, however, to prevent the imposition of liability by the courts by
reclassifying the act causing the injury."

1    E.g., Robinson v. Solano County, 278 F.3d 1007, 1016 (9th Cir. 2002) (citing Cal. Gov't Code §

2    815.2 and holding that, as to state law tort claims, *respondeat superior* liability applies and the

3    public entity employer is immune only insofar as the public employee is immune).  Similarly,

4    while "[u]nder California law, a public entity generally is immune from suit for injuries arising

5    from acts or omissions of the entity or its employees[,] California law creates an exception,

6    however, in cases where the public entity is 'under a mandatory duty imposed by an enactment

7    that is designed to protect against the risk of a particular kind of injury,' and the public entity is

8    liable for causing that kind of injury while failing to exercise reasonable diligence in discharging

9    its duty."  Mendez v. County of San Bernardino, 540 F.3d 1109, 1123 (9th Cir. 2008) (citing Cal.

10   Gov't Code §§ 815(a); 815.6) (internal citation omitted.)  Indeed, the Legislative Committee

11   Comment to Section 815.2 states, "Under this section, it will not be necessary in every case to

12   identify the particular employee upon whose act the liability of the public entity is predicated.

13   All that will be necessary will be to show that some employee of the public entity tortiously

14   inflicted the injury in the scope of his employment under circumstances where he would be

15   personally liable."  The undersigned also notes, however, that as presently drafted the complaint

16   does not reference Section 815.2 or any other statute upon which public entity liability may be

17   premised in this case.

18          Plaintiffs have not alleged which particular statute(s), if any, permit them to bring

19   state law tort claims against the City.  Further, even if the complaint made proper reference to an

20   authorizing statute, plaintiffs' practice of directing essentially every factual allegation at *all*

21   "defendants" obscures the factual bases of the claims directed against the City.  A pleading

22   should give a defendant fair notice of the claims against him, as well as the factual allegations

23   serving as the basis therefor.[7]  Accordingly, the City's motion to dismiss is granted, and

24

25          [7] Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain
     statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
     defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic
26   Corp., 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  In order to survive

1   plaintiffs' state law tort claims are dismissed as against the City.  However, such dismissal is

2   without prejudice, and plaintiffs shall have the opportunity to amend their complaint so as to

3   specify which statute(s), if any, authorize their tort claims against the City.  Such amendment

4   should also include clear statements of *which* factual allegations are directed at the City and any

5   Doe defendants affiliated with it.

6          Plaintiffs have also failed to allege that they presented the City with a notice of

7   claims.  The Government Claims Act provides that a party seeking to recover money damages

8   from a public entity or its employees must submit a claim to the entity before filing suit in court,

9   generally no later than six months after the cause of action accrues.[8]  See Cal. Gov't Code §§

10   905, 911.2, 945.4, 950-950.2.

11          Timely presentation of claims is not merely a procedural requirement but is an

12   element of the plaintiff's cause of action.  Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 209,

13   164 P.3d 630, 634 (2007) ("Timely claim presentation is not merely a procedural requirement,

14   but is, as this court long ago concluded, a condition precedent to plaintiff's maintaining an action

15   against defendant, and thus an element of the plaintiff's cause of action") (citation and quotation

16   marks omitted).  A plaintiff may sue a public entity and its employees only after the entity has

17   acted upon or is deemed to have rejected the claim.  Id.; see also Mangold v. Cal. Pub. Utils.

18   Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires, as a

19   condition precedent to suit against a public entity, the timely presentation of a written claim and

20   the rejection of the claim in whole or in part.").  A plaintiff's "failure to allege facts

21

22   ―――――――――――――――

22   dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation
23   of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right
     to relief above the speculative level."  Id.  However, "[s]pecific facts are not necessary; the
24   statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the
     grounds upon which it rests.'"  Erickson, 551 U.S. at 93 (2007) (quoting Bell Atlantic Corp.,
25   550 U.S. at 555) (citations and internal quotations marks omitted).

26          [8]  A state claim presentment requirements do not apply to *federal* civil rights actions.
     Ford v. Long Beach Unified Sch. Dist., 461 F.3d 1087, 1089-90 (9th Cir. 2006).

1   demonstrating or excusing compliance with the claims presentation requirement subjects a claim

2   against a public entity" to dismissal for failure to state a claim.[9]  State v. Superior Court (Bodde),

3   32 Cal. 4th 1234, 1239 (2004); Karim-Panahi, 839 F.2d at 627; accord Butler v. Los Angeles

4   County, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008) ("Although a plaintiff may include

5   supplemental state law claims in a civil rights action brought in federal court pursuant to 42

6   U.S.C. § 1983, the state law claims are subject to dismissal for failure to allege compliance with

7   the claim-filing requirement of the CTCA.  The CTCA applies to state law claims wherever those

8   claims are brought, and the requirement that a plaintiff must affirmatively allege compliance with

9   the CTCA applies in federal court.  'Complaints that do not allege facts demonstrating either that

10  a [tort] claim was timely presented or that compliance with the claims statute is excused are

11  subject to [dismissal].'" (citing cases) (internal citations omitted).

12          Here, plaintiffs allege that they filed a Government Tort Claim against the *County*

13  of Sacramento, but make no similar allegation with respect to filing a claim with the City or its

14  police department.  (Compl. ¶¶ 50-51.)  As plaintiffs' tort claims seek money damages, a failure

15  to allege claims presentation to the City is fatal to those claims.  See e.g., Bodde, 32 Cal. 4th at

16  1239; Karim-Panahi, 839 F.2d at 627; Butler, 617 F. Supp. 2d at 1001.

17          Accordingly, the City's motion to dismiss plaintiffs' state law tort claims is

18  granted, and the claims are dismissed as against the City.  However, such dismissal is without

19  prejudice.  As plaintiffs are proceeding without counsel in this action and are entitled to leniency

20  with respect to their pleadings, plaintiffs shall have the opportunity to amend their complaint.

21  Such amendment should include factual allegations addressing plaintiffs' compliance with the

22  claims-presentation requirement with respect to the City, to the extent that such allegations can

23

24          [9]  The Ninth Circuit Court of Appeals has held that a district court may properly dismiss
    supplemental state law claims for failure to allege compliance or an excuse from compliance
25  with the claims presentation requirement, but errs by failing to instruct a plaintiff regarding the
    necessity of alleging compliance with the exhaustion requirements.  See Karim-Panahi, 839 F.2d
26  at 627.

be made in good faith and within the purview of Federal Rule of Civil Procedure 11(b).  See Fed.

R. Civ. P. 11 (providing that all of a plaintiff's claims must be warranted by existing law or a

nonfrivolous argument for extending, modifying or reversing existing law or for establishing new

law, and that plaintiff's factual contentions must have evidentiary support, or, if specifically so

identified, will likely have evidentiary support after a reasonable opportunity for further

investigation).

        Accordingly, for the foregoing reasons IT IS HEREBY ORDERED that:

        (1)    The City's Motion to Dismiss (Dkt. No. 9) is granted; and plaintiffs'

claims are dismissed without prejudice as against the City.

        (2)    Plaintiffs are granted leave to file a First Amended Complaint within 45

days of the date of this order.  This 45 day period shall give plaintiffs additional time to search

for an attorney to represent them in this action.  If plaintiffs are able to find an attorney to

represent them in this action, the attorney shall file his or her appearance within 45 days of the

date of this order, and may request additional time to prepare an amended pleading.  If plaintiffs

are unable to find an attorney within this period, and if plaintiffs wish to maintain this action and

proceed without counsel, plaintiffs themselves remain obligated to file the First Amended

Complaint within 45 days of the date of this order.[10]  A failure to do so may result in the

dismissal of this action.

        IT IS SO ORDERED.

DATED:  June 27, 2011

                                _KENDALL J. NEWMAN_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[10]  Should plaintiffs wish to voluntarily dismiss their action rather than proceed without counsel, as plaintiffs appeared to indicate during the hearing on June 23, 2011, plaintiffs are directed to Federal Rule of Civil Procedure 41(a).